UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PESCHKE MAP TECHNOLOGIES LLC,

      Plaintiff,

v.                                                          Case No:   2:15-cv-173-FtM-38MRM

MIROMAR DEVELOPMENT
CORPORATION,

      Defendant.

_____/

## REPORT AND RECOMMENDATION[1]

Before the Court are the following submissions related to the issue of attorney's fees:

   1)  Defendant's Motion for Attorney Fees (Doc. 51) filed on May 5, 2016;

   2)  Plaintiff's Response in Opposition (Doc. 56) filed on June 1, 2016;

   3)  Defendant's Reply (Doc. 61) filed on June 17, 2016;

   4)  Plaintiff's Sur-Reply (Doc. 64) filed on June 24, 2016;

Also, before the Court are the following submissions related to the issue of costs:

   1)  Defendant's Bill of Costs (Doc. 50) filed on May 2, 2016;

   2)  Plaintiff's Objections to Defendant's Bill of Costs (Doc. 57) filed on June 2, 2016;

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites.  Likewise, the Court has no agreements with any of these third parties or their websites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

3) Defendant's Memorandum in Opposition to Plaintiff's Objections (Doc. 60) filed on June 14, 2016;

4) Plaintiff's Reply in Support of Objections to Defendant's Bill [of] Costs (Doc. 65) filed on June 30, 2016;

5) Defendant's Sur-Reply (Doc. 68) filed on July 12, 2016.

These matters were referred to the Undersigned for issuance of a Report and Recommendation. (*See* Doc. 51).

## I.   Background

### A.  Allegations in the Original Complaint for Patent Infringement

This is an action for patent infringement of U.S. Patent No. 6,397,143 ('143 Patent"). (Doc. 1 at ¶ 8).  Plaintiff Peschke Map Technologies LLC ("Peschke") alleged that George Peschke was the inventor of '143 Patent entitled "Layout Based Method for Map Navigation." (Doc. 1 at ¶1).  This invention entailed a computerized layout mapping technology, which *inter alia*, depicted a layout and location of stores and businesses, as well as information about stores and businesses on linked pages.  (Doc. 1 at ¶ 1).  The U.S. Patent and Trademark Office issued the '143 Patent on May 28, 2002.  (Doc. 1 at ¶ 1).

Peschke is the exclusive licensee of the '143 Patent.  (Doc. 1 at ¶ 2).  Peschke claimed that Defendant Miromar Development Corporation ("Miromar") was infringing on the '143 Patent on its website and elsewhere by using store layout mapping products, including a map navigation and display system to assist users in locating stores and businesses in a particular area or location and then providing store layouts and information corresponding to the stores, such as phone numbers and store hours.  (Doc. 1 at ¶ 8).

### B.  Procedural History and Related Matters

Both parties raise issues concerning other patent infringement lawsuits brought by Peschke in other jurisdictions as well as related matters brought before the United States Patent and Trademark Office ("PTO") and the Patent Trial and Appeal Board ("Appeal Board").  For ease in understanding the arguments asserted, the Court will briefly set forth these other actions.

#### 1.  Delaware Litigation and *Inter Partes* Proceeding

In November 2012, Peschke filed eighteen (18) lawsuits alleging infringement of the '143 Patent in the District of Delaware.  (Doc. 56 at 5).  All of these Delaware lawsuits have been dismissed.  (Doc. 56 at 5).

In July 2013, during the pendency of these lawsuits, several of the defendants in these cases filed a petition with the Appeal Board seeking an *inter partes* review of the '143 Patent. (Doc. 51 at 3; Doc. 56 at 5; Doc. 34-3).  On November 8, 2013, the Appeal Board entered a Decision instituting an *Inter Partes* Review.  (Doc. 51 at 4; Doc. 25-3 at 1).  The Appeal Board determined "that the information presented in the petition establishes that there is a reasonable likelihood that Petitioners would prevail in challenging claims 1-19 as unpatentable. Accordingly, pursuant to 35 U.S.C. § 314, we institute an *inter partes* review for claims 1-19 of the '143 Patent."  (Doc. 25-3 at 2).

Peschke settled with the defendants that brought the *Inter Partes* Review.  (Doc. 51 at 5; Doc. 56 at 5).  The Appeal Board entered a Termination of Proceedings on April 9, 2014.  (*See* Doc. 34-3).  The Appeal Board stated that it "instituted a trial in this proceeding on November 8, 2013, (Paper 19) but *has not decided the merits of the proceeding*. . . .  As the parties have filed their written settlement agreements, and the litigation related to this proceeding has been settled,

3

we determine that it is appropriate to terminate this proceeding with respect to Petitioners *without rendering a final written decision*."  (Doc. 34-3 at 2-3) (emphasis added).

### 2. *Ex Parte* Reexamination

On August 15, 2015, during the pendency of this action, Miromar instituted a collateral challenge to the '143 Patent by requesting an *ex parte* reexamination of the '143 Patent.  (Doc. 51 at 6; Doc. 56 at 5).  Miromar sought reexamination pursuant to 35 U.S.C. § 302 on the ground that there were substantial new questions of patentability in view of the prior art the Appeal Board previously considered in the *Inter Partes* Review.  (Doc. 51 at 6).  On October 6, 2015, the PTO entered an Order Granting [the] Request for *Ex Parte* Reexamination.  (Doc. 51-6 at 3). The PTO found that there were substantial new questions of patentability proposed by the requester and granted *ex parte* reexamination.  (Doc. 51-6 at 3).  On February 17, 2016, the PTO entered an Office Action rejecting the '143 Patent's Claims 1-19.  (Doc. 51 at 7; Doc. 47-2 at 4, 11-14.  In response, Peschke did not challenge any of the PTO's findings, but chose to file an amendment introducing eighteen (18) new claims.  (Doc. 51 at 7).  On April 7, 2016, the PTO issued a final rejection of Peschke's new claims.  (Doc. 51 at 7).

### 3. Eastern District of Virginia Cases

In the United States District Court, Eastern District of Virginia, Alexandria Division, Peschke filed two patent infringement lawsuits regarding the '143 Patent.  (*See* Doc. 51 at 7 n.4). In these cases, the defendants filed a motion to dismiss the lawsuits based on the '143 Patent being invalid, claiming unpatentable subject matter under 35 U.S. C. § 101.  On March 8, 2016, the District Judge entered a Memorandum Opinion granting the motions to dismiss and holding the '143 Patent invalid.  (Doc. 51 at 8; Doc. 56 at 7-8).

## II.    Analysis as to Award of Attorney's Fees

Pursuant to 35 U.S.C. § 285, Miromar seeks to have this case declared "exceptional" and be awarded attorney's fees and costs.  Specifically, Miromar claims that:  (1) the '143 Patent has been found invalid three times, twice by the PTO and once by a district court; (2) Peschke had presuit knowledge that the '143 Patent was invalid by (a)  knowing of the existence of Prior Art that was not considered by the PTO when issuing the '143 Patent, and (b) the Decision by the Appeal Board that there was a reasonable likelihood that the Prior Art invalidated the '143 Patent; and (3) Peschke drove up the litigation costs in the instant case by opposing nearly every motion without basis or by taking inconsistent positions.. (Doc. 51 at 3, 9-13).  Peschke responds that it had no presuit knowledge that the '143 Patent was invalid and it litigated this action reasonably.  (Doc. 56 at 8-13).

### A.  Legal Standard for Exceptional Cases

Section 285 of the Patent Act provides that, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."   35 U.S.C. § 285.  Prior to 2014, a case was "exceptional when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions."  *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005) (abrogated by *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 188 L. Ed. 2d 816 (2014)) (citations omitted).  The sanction of awarding fees and costs to the prevailing party in a patent case could only be imposed on the patentee if both the litigation was brought in bad faith and the litigation was obviously baseless.  *Id.*

5

In 2014, the Supreme Court found that this formulation was overly rigid. *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). The Supreme Court held that an "exceptional" case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* This determination must be made on a case-by-case basis, considering the totality of the circumstances, at the discretion of the district court. *Id.* As in cases under the Copyright Act, there is no precise formula or rule to make these determinations. *Id.* The Supreme Court suggested that district courts "could consider a 'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id.* (citations omitted). This determination is made using a preponderance of the evidence standard. *Octane Fitness, LLC*, 134 S. Ct. at 1758. The Supreme Court determined that the district court was in a better position to decide whether a case is "exceptional" "because it lives with the case over a prolonged period of time." *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748 (2014). The standard of review for the determination of whether a patent case is "exceptional" is reviewed only for abuse of discretion. *Id.*

### B. Prevailing Party

First, the Court must determine if Miromar is the prevailing party in this action. For the Court to find that Miromar prevailed in this action, the Court must find: "(1) that the party received at least some relief on the merits, and (2) [t]hat relief must materially alter the legal relationship between the parties by modifying one party's behavior in a way that directly benefits the opposing party." *SSL Servs., LLC v. Citrix Sys., Inc.*, 769 F.3d 1073, 1086 (Fed. Cir. 2014)

(internal quotation omitted) (quoting *Shum v. Intel Corp.*, 629 F.3d 1360, 1366 (Fed. Cir. 2010)). Additionally, to be considered a prevailing party, a party need not prevail on all of the claims. *Id.* (citations omitted).

On April 15, 2016, the District Court entered an Order (Doc. 48) granting Miromar's Motion for Judgment on the Pleadings (Doc. 44) and denying Peschke's Motion to Dismiss (Doc. 45). (*See* Doc. 48 at 6). The District Court discussed the issue of Miromar as the prevailing party in its Order. (*See* Doc. 48 at 5). Specifically, the District Court found that "[b]ecause a Rule 41(a)(2) dismissal might cause Defendant to lose a substantial right – its status as the prevailing party under 35 U.S.C. § 285 – the Court finds Peschke's Motion to Dismiss must be denied and Defendant's Motion for Judgment on the Pleadingly must be granted." (Doc. 38 at 5). Consequently, the District Court directed the Clerk to enter Judgment in favor of Miromar and against Peschke on Peschke's infringement claim. (*See* Doc. 48 at 5). Thus, Miromar obtained relief on the merits and the relief materially altered the legal relationship between the parties. Accordingly, the Undersigned finds that Miromar is the prevailing party in this action.

### C.  Exceptional Case

Next, the Court must determine whether this an "exceptional" case warranting an award of attorney's fees and costs. *See* 35 U.S.C. § 28; *Octane Fitness, LLC*, 134 S. Ct. at 1756.

### 1.  Prior Findings of Invalidity

Miromar asserts that Peschke's '143 Patent was found invalid three times – twice by the PTO and once by a district court. Even after these invalidity findings, Miromar argues that Peschke filed and pursued this action knowing its patent was invalid. (Doc. 51 at 3-8). The Court will address each of these alleged invalidity findings in turn.

### a. Delaware Cases and *Inter Partes* Proceeding

Miromar argues that the first instance when the '143 Patent was found invalid was in the *Inter Partes* Proceeding instituted by the defendants in the Delaware lawsuits.  (Doc. 51 at 5, 16).  Those defendants sought and were granted an *inter partes* review of the '143 Patent.  (Doc. 51 at 3).  The Appeal Board rejected Peschke's arguments and entered a decision to institute the *Inter Partes* Proceeding, finding that "there is a reasonable likelihood that Petitioners would prevail in challenging claims 1-19 as unpatentable."  (Doc. 25-3 at 2).  Ultimately, Peschke settled the Delaware cases and the *Inter Partes* Proceeding was dismissed.  (Doc. 51 at 5).  Miromar argues that with the knowledge of this finding, Peschke should have taken the '143 Patent back to the PTO to address the PTO's prior determination as to the cloud over the '143 Patent's validity, rather than to continue to file lawsuits throughout the country, including this lawsuit.  (Doc. 51 at 5).

Peschke argues that the *Inter Partes* Proceeding did not result in a finding of invalidity.  (Doc. 56 at 6).  Peschke claims that Miromar has no basis for its argument that if the *Inter Partes* Proceeding continued, the '143 Patent would have been found invalid.  (Doc. 56 at 6-7).

The Court has considered the decisions in the *Inter Partes* Proceeding, especially the Termination Proceedings.  (Doc. 34-3).  The Appeal Board clearly stated in the Termination Proceeding and, it is worth repeating here, that it "instituted a trial in this proceeding on November 8, 2013, (Paper 19) but *has not decided the merits of the proceeding*. . . .  As the parties have filed their written settlement agreements, and the litigation related to this proceeding has been settled, we determine that it is appropriate to terminate this proceeding with respect to Petitioners *without rendering a final written decision*."  (Doc. 34-3 at 2-3) (emphasis added).  Thus, the *Inter Partes* Review was dismissed without a decision on the merits.  Although

Peschke had an indication that the '143 Patent might be subject to a strong challenge as to validity, at the time of the *Inter Partes* Proceeding's termination, no finding on the merits of the validity of the '143 Patent had occurred.  Moreover, all of the Delaware cases settled prior to any ruling on the merits of the validity of the '143 Patent.  Accordingly, the Court finds that the *Inter Partes* Proceeding did not invalidate the '143 Patent and did not definitively place Peschke on notice that the '143 Patent was invalid.

### b. *Ex Parte* Re-Examination

Next, Miromar claims that the '143 Patent was invalidated by the *ex parte* reexamination of the '143 Patent instituted by Miromar during the instant litigation.  (Doc. 51 at 6-7).  Miromar asserts that on October 6, 2015, the PTO entered a decision granting the *ex parte* reexamination of the '143 Patent, finding that there were substantial new questions of patentability affecting all nineteen claims.  (Doc. 51 at 6).  Miromar claims that this second finding of invalidity did not deter Peschke from filing more lawsuits on the '143 Patent in the Eastern District of Virginia. Further, Miromar asserts that on February 17, 2016, the PTO issued an Office Action in the reexamination proceedings rejecting all of the '143 Patent's nineteen claims.  (Doc. 51 at 7). Miromar contends that Peschke did not challenge these findings and instead Peschke voluntarily surrendered all nineteen claims by filing an amendment canceling these claims without comment or explanation.  (Doc. 51 at 7).

Peschke asserts that the PTO's decision granting the *ex parte* reexamination raising arguments pursuant to 35 U.S.C. §§ 102 and 103 occurred on February 17, 2016.  (Doc. 56 at 11).  Whereas the decision in the Eastern District of Virginia invalidating the '143 Patent under 35 U.S.C. § 101 occurred on March 8, 2016.  (Doc. 56 at 11).  Peschke asserts that the Eastern District of Virginia's decision invalidating the patent was not based upon the same subject matter

as the reexamination.  (Doc. 56 at 11).  Peschke contends that once the claims were invalidated

in the Eastern District of Virginia's cases under 35 U.S.C. § 101, there was no need to respond to

in the reexamination proceedings.  (Doc. 56 at 11).  Rather, Peschke contends that the only

appropriate response was to cancel the existing claims in light of the finding under § 101.  (Doc.

56 at 11).

Upon consideration, the Court finds that the granting of the *ex parte* reexamination did

not invalidate the '143 Patent.  When the PTO found on February 17, 2016 that all nineteen of

the claims were rejected, the PTO allowed Miromar to submit proposed amendments to the

claims.  (*See* Doc. 47-2 at 15).  Thus, this decision was not a final decision as to the validity of

'143 Patent.  Although these amendments were ultimately rejected on April 7, 2016, Peschke had

already filed its Motion to Dismiss Plaintiff's Claims With Prejudice (Doc. 45) on March 29,

2016, in this case.  Thus, a final decision as to the validity of the '143 Patent had not been

rendered in the *ex parte* reexamination prior to Peschke filing his Motion to Dismiss and had

certainly not been rendered prior to Peschke instituting this action.

### c.  Eastern District of Virginia Cases

Miromar asserts that the third finding of invalidity was on March 8, 2016 in the Eastern

District of Virginia cases.  (Doc. 51 at 8).  Miromar argues that Peschke had an affirmative duty

to immediately notify the PTO of this order.  (Doc. 51 at 8).  Peschke does not dispute that the

'143 Patent was found invalid under 35 U.S.C. § 101 by the District Court in the Eastern District

of Virginia.  (Doc. 56 at 7-8).  Peschke argues that this finding of invalidity occurred one year

after this action was instituted and on different grounds than were presented here.  (Doc. 56 at 8).

Further, Peschke asserts that the day after the Eastern District of Virginia decision, the Clerk of

Court for the Eastern District of Virginia returned to the PTO the completed AO120 forms

initially filed by Peschke, along with a copy of the Memorandum Opinion and accompanying Order granting the Motion to Dismiss.  (Doc. 64 at 4-5).  Thus, the PTO had received copies of the ruling from the Eastern District of Virginia.

First, the Court finds that Peschke's duty or obligation to provide certain documents to the PTO was satisfied by the Clerk of Court in the Eastern District of Virginia providing the documents.  Second, the Court agrees that the Eastern District of Virginia's March 8, 2016 decision invalidated the '143 Patent.  That decision occurred approximately a year after this action was filed.  (*See* Doc. 1).  Thus, Peschke could not have definitively known of the '143 Patent's invalidity at the time this action commenced.  Moreover, after that decision, Peschke moved to dismiss this action.  (*See* Doc. 45).  Therefore, the Undersigned finds that Peschke did not commence and pursue this action after a final decision of invalidity of the '143 Patent occurred.

### 2.  Presuit Knowledge of Invalidity

Miromar asserts that Peschke filed multiple lawsuits similar to the instant case in other jurisdictions knowing that the '143 Patent was invalid.  Specifically, Miromar claims that Peschke knew:  (1) of the existence of the newly found prior art that was not known to or considered by the PTO when it issued the '143 Patent; and (2) that the PTO Patent Board issued a decision in the *Inter Partes* Proceeding showing that there was "a reasonable likelihood" that the prior art invalidated every claim of the Patent.  (Doc. 51 at 9).  Even with the above knowledge and knowing that Peschke settled the action before the PTO could adjudicate the Patent's invalidity, Miromar asserts that Peschke continued filing lawsuits, including the instant case.  (Doc. 51 at 9).  Finally, Miromar asserts that Peschke filed these types of actions with the goal of obtaining quick settlements.

Peschke argues in response that it instituted other similar patent infringement actions because the claims in those other actions were similar to the claims in this case.  (Doc. 56 at 10). Further, Peschke argues that the Prior Art was presented in the original '143 Patent application. (*See* Doc. 64 at 1-2).  Finally, Peschke states that the *Inter Partes* Proceeding was settled prior to any final decision on the merits of the validity of the '134 Patent.  (*See* Doc. 56 at 8-9).

In cases to enforce a patent, it is reasonable that the complaints would be similar if the claims are similar.  *See SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1349-50 (Fed. Cir. 2015). Regarding the prior art, Miromar failed to cite to any decision from a court or from the PTO that invalidated the '143 Patent based upon Peschke failing to list prior art in the initial Patent Application.  As stated above, the *Inter Partes* Proceeding was settled prior to a final decision as to the validity of the '143 Patent.  Absent a definitive ruling finding the '143 Patent invalid based on the failure of Peschke to list prior art in its Patent Application, the Undersigned finds that it is impermissibly speculative to assume that Peschke had pre-suit notice that the '143 Patent was allegedly invalid based on prior art.  Thus, such an assumption is not a basis for finding this case "exceptional."

### 3.  Litigation Conduct as to Increasing Costs

Miromar asserts that Peschke intentionally increased the litigation expenses in this case by its conduct.  (Doc. 51 at 9).  Miromar asserts that Peschke opposed nearly all of Miromar's motions without a basis for opposition.  (Doc. 51 at 9-10).  Specifically, Miromar argues that Peschke opposed the motion to stay this lawsuit pending the outcome of the reexamination. (Doc. 51 at 10).  Miromar claims Peschke's argument – that a stay is premature until the PTO made a determination as to whether it would reexamine the '143 Patent – is frivolous.  (Doc. 51 at 10).  Further, Miromar claims that Peschke failed to consent to allow Miromar to amend its

answer to assert counterclaims, advised that it would oppose the motion, threatened Rule 11 sanctions, but then failed to file an opposition to the motion. (Doc. 51 at 12-13). Finally, Miromar contends that Peschke failed to agree to Miromar's Motion for Judgment on the Pleadings (Doc. 44) and instead filed its own Motion to Dismiss Plaintiff's Claims With Prejudice (Doc. 45).

Peschke argues that it had a reasonable basis to file a response in opposition to the Motion to Stay, believing, *inter alia*, that the reexamination would not be granted. (Doc. 56 at 10-12). Further, Peschke initially opposed the Motion for Leave to Amend its Answer and Counterclaims based on Miromar's failure to articulate a basis for filing the motion, but later decided after the Motion was granted not to pursue sanctions. (Doc. 56 at 17). Finally, Peschke asserts that even though the '143 Patent was declared invalid in the Eastern District of Virginia, the reexamination by Miromar is still pending and Peschke believes that new claims may result from the reexamination. (Doc. 56 at 17). Peschke was willing to dismiss all current claims with prejudice, but was not willing to dismiss all potential claims. (Doc. 56 at 17).

The Court has reviewed the Order (Doc. 41) on the Motion to Stay Proceedings Pending Outcome of Request for Reexamination of Plaintiff's Patent. The District Court held that, "[i]t is within the Court's discretion whether to stay an action while these reexamination proceedings are ongoing," citing to *Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 848-49 (Fed. Cir. 2008). (Doc. 41 at 2). Although the Court adopted Miromar's arguments, it did not indicate that Peschke's arguments regarding the stay were meritless or frivolous.

Regarding the Motion for Leave to Amend Its Answer to Assert a Counterclaim (Doc. 35), Peschke may have opposed it, but failed to file a response. For Miromar to amend its Answer to file additional counterclaims, it was required to file a motion and set forth the reasons

why leave to amend should be granted.  *See* Fed. R. Civ. P. 15.  The Court cannot find that Peschke needlessly raised litigation expenses by not consenting to a motion and then choosing not to file a response after seeing the motion.

Finally, as to the Motion for Judgment on the Pleadings (Doc. 44) and Peschke's Motion to Dismiss, the Court reviewed the Order (Doc. 48) entered granting the relief requested.  The District Court did not indicate that Peschke's response to the Motion for Judgment on the Pleadings or Peschke's Motion to Dismiss were meritless or frivolous.  Thus, the Court finds Peschke did not needlessly increase litigation expenses by attempting to have this action dismissed in the manner that benefitted Peschke.  Further, upon a review of the record, the Court finds that Peschke litigated this case in a reasonable manner.

### 4.  Litigation Misconduct

Miromar asserts that this case should be considered "exceptional" due to litigation-related misconduct.  (Doc. 51 at 16).  Miromar contends that Peschke's position was exceptionally weak and objectively unreasonable.  (Doc. 51 at 15).  Further, Miromar argues that Peschke quickly settled most other lawsuits and had no intention of testing the merit of the '143 Patent.  (Doc. 51 at 16-17).  Peschke objects to Miromar's mischaracterization of its litigation conduct and asserts that it litigated this action reasonably.

After *Octane Fitness*, *supra*, a court must consider whether the case was litigated in an unreasonable manner to find that the case is "exceptional" and award fees.  *See SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1349 (Fed. Cir. 2015).  Examples of litigation misconduct include a patentee's destruction of relevant documents, lodging incomplete and misleading extrinsic evidence, and attempts to induce a nuisance settlement by instituting a meritless claim.  *Id.* at 1350 (citing *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1323 (Fed. Cir. 2011)).  Further

examples of misconduct include misrepresentation of both the law of claim construction and the construction found by the court; and introducing expert testimony that failed to meet a minimal standard of reliability that prolonged the litigation.  *Id.* (citing *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 919 (Fed. Cir. 2012)).

Miromar repeats its prior argument that the PTO Appeal Board found that there was a reasonable likelihood that every claim of the '143 Patent was invalid, yet, Peschke continued to litigate this case.  As explained above, a reasonable likelihood is an indication that the '143 Patent may be found invalid at some point, but it is not a definitive finding of invalidity.  Further, the Appeal Board specifically stated that it made no decision on the merits in the *Inter Partes* Proceeding.  (See, Doc. 34-3 at 2-3).  Thus, the Court will not jump to the conclusion that just because Peschke chose to settle the *Inter Partes* Proceeding, it had no arguments to support the validity of the '143 Patent in that proceeding.  Accordingly, the Court finds that in continuing to pursue this action, Peschke was not engaging in litigation misconduct.

Next, Miromar argues that Peschke litigated this case in an unreasonable manner, arguing that with the exception of the three successful challenges to the validity of the '143 Patent, Peschke's other lawsuits quickly settled.  (Doc. 51 at 16).  In support of this contention, Miromar cites to the settlement of the *Inter Partes* Proceeding and the Delaware cases.  (Doc. 51 at 16-17).  Peschke responds that the cases highlighted by Miromar support Peschke's argument that it litigated this case reasonably.  (Doc. 56 at 17).  The Undersigned finds that Miromar has failed to show that Peschke's conduct in this litigation rose to the level of misconduct that would make this an "exceptional" case.  There are no allegations that Peschke destroyed relevant documents, presented false documents, mislead the Court or the PTO, misrepresented the claims, or introduced any evidence in this case to merely prolong the case and force a settlement.  *See*

*Sys., LLC v. Newegg Inc.*, 793 F.3d at 1349-50.  Accordingly, the Undersigned finds no litigation misconduct in settling other lawsuits quickly.

Similarly, Miromar claims that Peschke engaged in misconduct by filing this action to gain a quick settlement here.  (Doc. 51 at 16-17).  "[A] pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims, is relevant to a district court's exceptional case determination under § 285."  *SFA Sys., LLC*, 793 F.3d at 1349.  However, the fact that a patent holder filed several lawsuits against numerous defendants "is insufficient to render this case exceptional.  In many cases, patent infringement is widespread and the patent owner may be forced to revert to widespread litigation against several infringing parties to enforce its intellectual property rights."  *Id.* at 1347.

Miromar cites to cases that involve a patent holder filing many more lawsuits than the number Peschke instituted to defend its '143 Patent.  (*See* Doc. 51 at 17); *see also Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011) (patent holder filed over 100 lawsuits); *Novartis Corp. v. Webvention Holdings LLC*, No. CIV. CCB-11-3620, 2015 WL 3901639, at *1, 4 (D. Md. June 22, 2015) (patent holder filed several hundred lawsuits and sent hundreds of demand letters).  Peschke's conduct in instituting its cases for infringement against different defendants does not rise to the level that would classify this case as "exceptional."

Additionally Miromar contends that the case of *Novartis Corp. v. Webvention Holdings LLC*, No. CCB-11-3620, 2015 WL 6669158, at *3 (D. Md. Oct. 28, 2015) is similar to the instant case and, in *Novartis*, the court awarded fees under 35 U.S.C. § 285.  (Doc. 51 at 17).  In *Novartis*, Webvention acquired a patent and began a broad enforcement campaign demanding large licensing fees from many companies using the patented technology.  *Novartis*, 2015 WL

6669158, at *1.  The court dismissed Webvention's infringement counterclaim with prejudice, granted Webvention's motion to dismiss, and denied Novartis' motion for judgment on the pleadings as moot.  *Id.* at 2.  In support of the finding of an exceptional case, the court determined:  (1) Webvention's sole purpose was to extract licensing fees from as many companies as possible and accordingly sent demand letters to these companies at a fraction of the price it would cost to fully litigate the claims and, thus, inducing nuisance settlements; and (2) Webvention continued this conduct despite being in possession of a letter identifying prior art. *Id.* at *3-4.  The court also considered Webvention's actions before the PTO, finding that Webvention was not forthcoming in providing prior art that it knew existed.  *Id.* at *3.

*Novartis* is distinguishable from the instant case.  In *Novartis*, Webvention's actions constituted clear misconduct.  *See id.* at *3-4.  Webvention's business model was to extract licensing fees and, when that failed, bring suit to try to extract quick settlements.  *See id.* Further, Webvention misled the PTO by failing to timely disclose prior art before the PTO.  *See id.*  Moreover, Webvention brought a wave of litigation.  *See id.*  In the instant case, Miromar has failed to show that Peschke's conduct amounted to the type of misconduct presented in *Novartis*. Specifically, Miromar failed to show:  (1) that Peschke engaged in broad enforcement campaign; (2) that a court or the PTO adjudicated the issue of Peschke's alleged failure to disclose prior art at the initial Patent Application; and (3) that Peschke was involved in extorting licensing fees. Peschke's conduct in this case does not appear to have risen to the level of Webvention's conduct in *Novartis*.

Miromar also cites to *Edekka LLC v. 3balls.com, Inc.*, No. 2:15-CV-541 JRG, 2015 WL 9225038 (E.D. Tex. Dec. 17, 2015) as a case similar to the instant case.  In that case, eDekka sued a large number of defendants alleging infringement of a patent.  *Id.* at *1.  On motions to

dismiss, the court dismissed the action, holding that the patent claims were patent-ineligible under 35 U.S.C. § 101. *Id.* The Court found that the patent was "demonstrably weak on its face" and, rather than acknowledge the inherent weaknesses in the patent, eDekka proffered "completely untenable arguments" to the Court. *Id.* at *2. In the instant case, Miromar fails to cite to any portion of the Memorandum Opinion entered in the Eastern District of Virginia cases that indicates the court found that the '143 Patent was "demonstrably weak on its face" or that Peschke's arguments were "completely untenable." (*See* Doc. 44-6). Thus, the Court finds the *eDekka* case distinguishable from the case at bar.

Lastly, Miromar asserts that deterrence is a factor to be considered in finding this case to be an "exceptional" case, citing to *Lumen View Tech., LLC v. Findthebest.com, Inc.*, 24 F. Supp. 3d 329 (S.D.N.Y. 2014), *aff'd*, 811 F.3d 479 (Fed. Cir. 2016). (Doc. 51 at 18). Based on the reasons stated above, the Court finds that Peschke did not engage in litigation misconduct and, thus, deterrence is not a factor in this case.

Accordingly, the Undersigned finds that Peschke did not engage in litigation misconduct that would constitute a finding that this case is an "exceptional" case under 35 U.S.C. § 285.

### D. **28 U.S.C. § 1927**

Miromar asserts many of the same arguments to support an award of fees and costs pursuant to 28 U.S.C. § 1927. Miromar argues that Peschke brought this lawsuit knowing that the PTO had determined that there was a reasonable likelihood that every claim of the '143 Patent was invalid. (Doc. 51 at 20). Moreover, Miromar asserts that once the reexamination was instituted, Peschke voluntarily canceled all of its Patent claims rather than assert any opposition. (Doc. 51 at 20). Further Peschke opposed Miromar's Motion for Judgment on the Pleadings for

the sole purpose of avoiding this motion for fees.  (Doc. 51 at 20).  Peschke opposes the

contention that it litigated this matter unreasonably and vexatiously.

Section 1927 provides as follows:  "Any attorney or other person admitted to conduct

cases in any court of the United States or any Territory thereof who so multiplies the proceedings

in any case unreasonably and vexatiously may be required by the court to satisfy personally the

excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28

U.S.C. § 1927.  An attorney may be sanctioned for the extra fees and costs incurred because of

conduct that multiplied the proceedings unreasonably or vexatiously.  *Adams v. Austal, U.S.A.,*

*L.L.C.*, 569 F. App'x 728, 731 (11th Cir. 2014).  A party must show that the conduct was "'so

egregious that it [was] tantamount to bad faith."  *Id.* (citing *Peer v. Lewis*, 606 F.3d 1306, 1314

(11th Cir. 2010; quoting *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th

Cir. 2007)).  The statute imposes three essential requirements to award sanctions under § 1927:

(1) the attorney must engage in "unreasonable and vexatious" conduct; (2) the "unreasonable and

vexatious" conduct must be conduct that multiplies the proceedings; and (3) the dollar amount of

the sanction must bear a "financial nexus to the excess proceedings, *i.e.*, the sanction may not

exceed the 'costs, expenses, and attorneys' fees reasonably incurred because of such conduct.'"

*Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007) (quoting

*Peterson v. BMI Refractories*, 124 F.3d 1386 (11th Cir. 1997)).

As stated above, despite the PTO finding a reasonable likelihood that the claims in the

'143 Patent were invalid, the only finding of invalidity was by the court in the Eastern District of

Virginia cases.  Shortly after that ruling occurred, Peschke filed its Motion to Dismiss.  Even

though the District Court granted Miromar's Motion for Judgment on the Pleadings and denied

Peschke's Motion to Dismiss, there is no indication in that Order (Doc. 48) that the Court found

Peschke was unreasonably and vexatiously multiplying these proceedings.  Thus, the Court finds that Miromar is not entitled to its fees and costs pursuant to 28 U.S.C. § 1927.

### III.     Analysis of Costs

Miromar requests that $6,601.65 in costs and expenses be taxed to Peschke.  (*See* Doc. 50 at 1-2; Doc. 50-1 at 1-10; Doc. 51 at 25).  Peschke objects to all of the costs with the exception of $113.85.  (Doc. 57 at 1).  Miromar asserts that it should be awarded all of its costs pursuant to Fed. R. Civ. P. 54, 28 U.S.C. § 1920, 35 U.S.C. § 285, and 28 U.S.C. § 1927.

### A.  Standards for Costs

Pursuant to Fed. R. Civ. P. 54(d), "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1).  Congress has comprehensively regulated the taxation of costs in federal courts. *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 444-45 (1987). Absent statutory language to the contrary, courts are limited in taxing costs to those costs enumerated in 28 U.S.C. §1920. *Id.*  A court has discretion to tax costs enumerated in § 1920, however, it is prohibited from taxing costs that are not enumerated in that statute, absent another basis for awarding costs. *Id.*

Section 1920 provides the following list of taxable costs:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.  A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

28 U.S.C. § 1920.  Thus, for an award of costs under § 1920, Miromar must show that the requested costs are enumerated in the statute.

Miromar also requests costs be awarded pursuant to 35 U.S.C. § 285.  A determination of fees and costs pursuant to 35 U.S.C. § 285 is a two-step process.  *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1308 (Fed. Cir. 2013).  First, the Court must determine that the case is "exceptional" and if exceptional, then it must determine the amount of fees and costs that are appropriate.  *Id.*  In this case, the Court did not find that this case was "exceptional" pursuant to 35 U.S.C. § 285.  Thus, the Court will not award costs under 35 U.S.C. § 285.

Lastly, Miromar requests that costs be awarded pursuant to 28 U.S.C. § 1927.  Sanctions pursuant to 28 U.S.C. § 1927 may be assessed against an attorney who unreasonably and vexatiously multiplies the proceedings.  *Blitz Telecom Consulting, LLC v. Peerless Network, Inc.*, No. 6:14-CV-307-ORL-40GJK, 2016 WL 6125585, at *2 (M.D. Fla. Oct. 20, 2016).  Here, the Court determined above that Miromar is not entitled to fees and costs pursuant to 28 U.S.C. § 1927.

Accordingly, the Court finds that Miromar is entitled to costs solely pursuant to Fed. R. Civ. P. 54 and 28 U.S.C. § 1920, and that the costs must be limited to those enumerated in 28 U.S.C. § 1920.

### B.  Timeliness

As a preliminary matter, Miromar raises the alternative arguments that either:  (1) Peschke was untimely in filing its objections to the Bill of Costs or (2) that the filing was premature.  (Doc. 60 at 1-2).  Rule 54 provides in part that the "clerk may tax costs on 14 days'

notice.  On motion served within the next 7 days, the court may review the clerk's action."  Fed. R. Civ. P. 54(d)(1).  It is within the discretion of the court to decline to review an untimely objection to costs.  *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1254 (11th Cir. 2007).  The problem in this case is that the Clerk of Court has not taxed costs.  Thus, the Objection (Doc. 57) is not untimely and technically is premature.  Nonetheless, the Court in its discretion will review the Bill of Costs (Doc. 50) and make its recommendation as to taxable costs.

### C.  Costs in Dispute

Peschke argues that the reexamination filing fee of $6,000.00 is not recoverable.  (Doc. 57 at 3-4).  Miromar acknowledges that the reexamination filing fee is not enumerated in § 1920, but requests that it be taxed pursuant to 35 U.S.C. § 285 based upon this action being an "exceptional" case and also under 28 U.S.C. § 1927.  (Doc. 60 at 3-4).  As the Undersigned found above, this action is not an exceptional case pursuant to 35 U.S.C. § 285 and is not subject to 28 U.S.C. § 1927.  Thus, the Undersigned recommends that the reexamination filing fee of $6,000.00 not be taxed.

Miromar requests costs in the amount of $402.15 for copies of documents from both the reexamination proceeding and the *Inter Partes* review.  (Doc. 60 at 4).  Miromar claims that copies of these documents were used in this lawsuit and submitted as exhibits to filings made by Miromar in this case.  Peschke argues that these costs are not recoverable as they are associated with the reexamination and matters before the PTO and not incurred in this litigation.  (Doc. 57 at 4-5).

Pursuant to 28 U.S.C. § 1920, fees for the costs of copies necessarily obtained for use in the case are taxable.  *See* 28 U.S.C. § 1920(4).  Miromar claims that it was necessary to obtain these documents in preparation for this lawsuit and to submit them as exhibits in this action.

Miromar failed to indicate which of the documents it attached as exhibits in the case.  Upon a brief review of the docket, it appears that documents from the *Inter Partes* Proceeding, and a copy of the Request for Reexamination were attached as exhibits to the Motion to Stay (Doc. 25) and the Reply (Doc. 34).  Therefore, the Undersigned recommends that the copy of the Filings in *Inter Partes* Proceeding Number IPR 2013-0040 in the amount of $177.75 and the copy of the Request for Reexamination in the amount of $52.95 be taxed as costs.

After a review of the file, the Court did not locate a copy of the Prosecution History for Reexamination or a copy of Requester's Reply to Patent Owner's Statement.  Accordingly, the Undersigned recommends that the costs of $169.80 and $1.65 not be taxed as costs.

Peschke asserts that the costs for a copy of the Inventors Watch File History Patent 6,397,143 in the amount of $82.50 is not recoverable.  (Doc. 57 at 5).  Peschke claims that this information was available online, free of charge, courtesy of the PTO.  (Doc. 57 at 5).  Further, Peschke asserts that this document was provided to Miromar as part of its initial disclosures. (Doc. 57 at 5).  Miromar states that this document was necessary for Miromar to determine the scope and meaning of the patent's claim terms and assess its validity.  (Doc. 60 at 5).  Miromar asserts that it could not obtain this document for free online at the PTO at the time it was needed. (Doc. 60 at 5).  The Court determines that Miromar has shown that a copy of the Inventors Watch File History was necessarily obtained to evaluate the case, and was needed prior to Peschke providing it in Peschke's mandatory initial disclosures.  Accordingly, the Undersigned recommends that the cost of $82.50 for a copy of this document be taxed.

Finally, Peschke asserts that the cost of a copy of the Complaint was duplicative and not necessary because Miromar received a copy of the Complaint at the time it was served.  Extra copies of pleadings made for the convenience of counsel are not recoverable as costs under §

1920(4).  *See Berlinger v. Wells Fargo*, No. 2:11-CV-459-FTM-29CM, 2016 WL 4920079, at *3 (M.D. Fla. Sept. 15, 2016) (citation omitted).  The Court agrees, therefore, that an extra copy of the Complaint is not taxable.  Thus, the Undersigned recommends that $3.15 not be taxed as costs.

Accordingly, the Undersigned recommends that the following costs not be taxed:

| | |
|---|---|
| Copy of Complaint | $3.15 |
| Copy of Prosecution History for Reexamination | $169.80 |
| Copy of Requester's Reply to Patent Owner's Statement | $1.65 |
| United States Patent and Trademark Office filing fee Reexamination proceeding number 90/020,088 | $6,000.00 |
| **Total Non-Taxable Costs** | $6,174.60 |

The Undersigned also recommends that the following costs be taxed:

| | |
|---|---|
| Uncontested Costs (*See* Doc. 57 at 1) | $113.85 |
| Copy of Filings in Inter Partes Proceeding Number IPR2013-0040 | $177.75 |
| Copy of Request for Reexamination | $52.95 |
| Copy of Inventors Watch File History Patent 6,397,143 | $82.50 |
| **Total Taxable Costs** | $427.05 |

## IV.      Conclusion

The Undersigned finds that Peschke's conduct in this case did not rise to the level required to characterize this case as "exceptional" under 35 U.S.C. § 285 and does not warrant the imposition of sanctions under 28 U.S.C § 1927.  Accordingly, the Undersigned recommends that attorney's fees not be awarded in this case.  Further, the Undersigned finds that only the costs enumerated in 28 U.S.C. § 1920 are taxable and recommends that $427.05 be taxed as costs.

**IT IS RESPECTFULLY RECOMMENDED:**

For the reasons stated above, the Motion for Attorney Fees (Doc. 51) be **GRANTED in part and DENIED in part** and the Clerk be directed to tax $427.05 in costs.

Respectfully recommended in Chambers in Ft. Myers, Florida on December 22, 2016.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Copies furnished to:
Counsel of Record
Unrepresented Parties